IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE CONAGRA PEANUT BUTTER PRODUCTS LIABILITY LITIGATION | MDL DOCKET NO. 1845<br>1:07-md-1845-TWT |
| BOBBY JOE KIDD,<br>    Plaintiff,<br>    v.<br>CONAGRA FOODS, INC., et al.,<br>    Defendants. | CIVIL ACTION FILE<br>NO. 1:07-CV-1415-TWT |

ORDER

This is a personal injury case. It is before the Court on Defendant ConAgra Foods, Inc.'s and Defendant Wal-Mart Stores Inc.'s Renewed Motion for Summary Judgment [Doc. 81]. For the reasons set forth below, the Court GRANTS the Defendants' motion.

I. Background

This case arises out of Defendant ConAgra Foods, Inc.'s ("ConAgra") 2007 recall of Peter Pan and Great Value peanut butter, after the CDC and FDA reported an association between these products and Salmonella Tennessee. After the recall, Bobby Joe Kidd sued ConAgra and Wal-Mart, alleging that he contracted

Salmonellosis, a bacterial infection caused by Salmonella Tennessee, after eating Great Value peanut butter manufactured by ConAgra and sold by Wal-Mart. On September 1, 2010, ConAgra and Wal-Mart filed a Motion for Summary Judgment [Doc. 15]. On May 4, 2011, the Court denied the Defendants' motion [Doc. 28]. The Court reasoned that the testimony of the Plaintiff's expert, Dr. Jimmy Graham, created an issue of material fact as to the cause of the Plaintiff's illness.

Subsequently, the Court ordered the Plaintiff to submit the allegedly contaminated peanut butter for testing. The peanut butter tested negative for salmonella. (See Defs.' Renewed Mot. for Summ. J., Ex. 1.) On December 13, 2011, the Defendants filed a Renewed Motion for Summary Judgment [Doc. 81]. The Defendants argue that the additional testing discredits Dr. Graham's testimony.

## II.  Summary Judgment Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S.

317, 323-24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 257 (1986).

### III. <u>Discussion</u>

The Defendants contend that there is no issue of material fact as to the cause of the Plaintiff's illness. Specifically, the Defendants argue that Dr. Graham's expert opinion is invalid because the peanut butter at issue tested negative for salmonella. At his deposition, Dr. Graham testified that Kidd's illness was caused by Salmonellosis. Dr. Graham based this opinion on the assumption that the Plaintiff's peanut butter was contaminated. (<u>See</u> Graham Dep. at 133.) Indeed, Dr. Graham testified that if Kidd's peanut butter tested negative for salmonella, he would change his opinion. (<u>See</u> <u>id.</u> at 131.) Tests indicated that the Plaintiff's peanut butter was not contaminated by salmonella. (<u>See</u> Defs.' Renewed Mot. for Summ. J., Ex. 1.)

The Plaintiff, however, has filed a second affidavit by Dr. Graham. (<u>See</u> Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ. J., Ex. 1.) In this second affidavit, Dr. Graham claims that the negative test is unreliable. Specifically, Dr. Graham opines that salmonella may have contaminated only a small portion of the Plaintiff's peanut butter. Also, Dr. Graham states that this negative test does not change his opinion that Kidd had Salmonellosis.

The Court will not consider Dr. Graham's second affidavit. First, the affidavit is untimely. This case was part of the ConAgra MDL proceeding. On October 23, 2007, the Court ordered that expert disclosures dealing with global issues be submitted no later than May 1, 2009 [See Docs. 9 & 11]. On May 27, 2011, more than two years after the Court's deadline, the Plaintiff named three experts expected to testify. In addition to Dr. Graham, Kidd named Dr. Jeff Hillman and Dr. Charles Stratton. Dr. Hillman and Dr. Stratton offered testimony regarding peanut butter testing reliability and CDC procedures. The Defendants did not object to Dr. Graham's case-specific testimony consistent with his first affidavit of October 6, 2010. The Defendants did, however, object to Dr. Hillman's and Dr. Stratton's testimony. On November 9, 2011, the Court excluded the testimony of Dr. Hillman and Dr. Stratton, reasoning that their opinions related to global issues and were therefore untimely. In his second affidavit, Dr. Graham's testimony regarding peanut butter testing and CDC guidelines tracks Dr. Hillman's and Dr. Stratton's excluded opinions. These subjects relate to global issues. Expert disclosures regarding global issues were to have been submitted by May 1, 2009 [See Docs. 9 & 11]. Thus, Dr. Graham's second affidavit is untimely.

Second, Dr. Graham is not qualified to testify regarding the reliability of the negative peanut butter test. Dr. Graham is a medical doctor, not a microbiologist or

an expert on food testing. He is not qualified to render opinions regarding the reliability of peanut butter tests. Nor is he qualified to interpret or apply CDC guidelines for salmonella outbreaks. Finally, Dr. Graham asserts that 87% of peanut butter tests result in false negatives for salmonella contamination. He offers no authority for this statistic. Thus, the Court will not consider Dr. Graham's second affidavit. As discussed above, Dr. Graham's original testimony was based upon the false assumption that the Plaintiff's peanut butter was contaminated by salmonella. Because this underlying assumption was incorrect, the Court will disregard Dr. Graham's opinion. See Fox v. Tyson Foods, Inc., No. 4:99-CV-1612, 2006 U.S. Dist. LEXIS 97723, at *23 (N.D. Ala. Nov. 15, 2006) ("[T]he Court is not under any obligation to consider opinions which are based on false assumptions nor shall the Court ponder unreliable expert testimony."); Macaluso v. Herman Miller, Inc., No. 01-CV-11496, 2005 WL 563169, at *6 (S.D.N.Y. March 10, 2005) (finding that "[t]he conclusions drawn by the plaintiffs' expert . . . must be disregarded because they were based on the erroneous assumption.").

Further, since the Defendants filed their first motion for summary judgment, the Defendants have produced further evidence that Kidd did not have Salmonellosis. Both Kidd's treating physicians, Dr. David DeLorenzo and Dr. Jay Philipose, testified that they did not diagnose the Plaintiff with Salmonellosis because there was no

medical evidence to support such a diagnosis. (See DeLorenzo Dep. at 12 & 44; Philipose Dep. at 9 & 18.) Also, Kidd's blood, urine, and gastric contents tested negative for salmonella. (See Graham Dep. at 132; DeLorenzo Dep. at 14; Philipose Dep. at 11, 12, 18, & 43-44.) Finally, Kidd's CT scan was inconsistent with a diagnosis of Salmonellosis. (DeLorenzo Dep. at 17.) Thus, disregarding Dr. Graham's unreliable testimony, there is no issue of material fact that Kidd's injuries were caused by Salmonellosis.

## IV. Conclusion

For the reasons set forth above, the Court GRANTS the Defendants' Renewed Motion for Summary Judgment [Doc. 81].

SO ORDERED, this 9 day of January, 2012.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge